# **<u>EXHIBIT 2</u>**

{1368.002-W0071438.2}

Friedberg was indeed considered one of the key decisionmakers within the FTX Group and was routinely identified as a member of the senior executive team.

33. Friedberg owed fiduciary duties to Alameda, FTX, WRS, and FTX US, where he was employed as a high-ranking legal and/or compliance officer. These fiduciary duties, at a minimum, meant that Friedberg owed duties of care, loyalty, and good faith to those entities. As part of those broader duties, Friedberg also had a duty to minimize the risk the FTX Group faced from control failures.

34. Friedberg was well compensated. Bankman-Fried offered Friedberg an annual base salary of $300,000, a $1.4 million signing bonus, performance-based annual bonuses, and an 8% equity stake in FTX US. In addition, Bankman-Fried promised Friedberg "consideration of small portions of equity in futures [sic] ventures" in which Friedberg was significantly involved. The majority of Friedberg's salary was paid by Alameda, and a small portion was paid by FTX US.

35. In July 2020, the FTX Group caused Friedberg to be granted 102,321,128 Serum tokens, a digital currency launched by the ~~Solana~~ Serum Foundation in 2020. At the time, the ~~Solana~~ Serum Foundation's members included Alameda. At the time of Plaintiff's bankruptcy filing the value of Serum was estimated at $.33 per token, and therefore Friedberg's Serum holdings were worth $33,765,972.20. Upon information and belief, Friedberg did not provide the FTX Group with any consideration for these tokens.

36. In June 2021, Friedberg received a $3,007,451.30 cash bonus payment from Alameda (the "2021 Alameda Bonus").

**COUNT IX**
**Fraudulent Transfer Pursuant to Del. Code Ann. Tit. 6, § 1304(a)(1)**
**and 11 U.S.C. §§ 544(b) and 550**
**(by all Plaintiffs)**

159.    Plaintiffs reincorporate and reallege the allegations set forth in Paragraphs 1 through 114 of the Complaint as though the same were set forth in full herein.

160.    Section 544(b) of the Bankruptcy Code authorizes Plaintiffs to avoid any transfer of an interest in their property that is voidable under applicable law by a creditor holding an allowable unsecured claim. Accordingly, fraudulent transfers are avoidable pursuant to Bankruptcy Code section 544(b) and other applicable law, including the Delaware Uniform Fraudulent Transfer Act, Del. Code Ann. tit. 6, § 1301, *et seq*.

161.    Friedberg was paid an annual salary of $300,000, a $1.4 million signing bonus, 8% equity in FTX US, and performance-based annual bonuses. On June 15, 2021, Plaintiff Alameda paid the $3,007,451.30 2021 Alameda Bonus to Friedberg.

162.    The aforementioned payments were transfers of property of the Plaintiffs.

163.    In addition, in July 2020, the FTX Group caused Friedberg to be granted 102,321,128 Serum tokens as well as, potentially, other transfers of cryptocurrencies or assets.

164.    The ability to obtain the Serum tokens was an opportunity of the Plaintiffs because of, among other things, Alameda's membership in the ~~Solana~~ Serum Foundation. Therefore, that opportunity was property of the Plaintiffs, and the transfer of Serum tokens to Friedberg was a transfer of property of the Plaintiffs.

165.    On June 15, 2021, Plaintiff Alameda paid the $3,007,451.30 2021 Alameda Bonus to Friedberg. The payment of the 2021 Alameda Bonus to Friedberg was a transfer of property of Alameda. Each of the transfers is avoidable by creditors who hold allowable unsecured claims.

170. Section 544(b) of the Bankruptcy Code authorizes Plaintiffs to avoid any transfer of an interest in their property that is voidable under applicable law by a creditor holding an allowable unsecured claim.  Accordingly, fraudulent transfers are avoidable pursuant to Bankruptcy Code Section 544(b) and other applicable law, including the Delaware Uniform Fraudulent Transfer Act, Del. Code Ann. tit. 6, § 1301, *et seq*.

171. Friedberg was paid an annual salary of $300,000, a $1.4 million signing bonus, 8% equity in FTX US, and performance-based annual bonuses.  On June 15, 2021, Plaintiff Alameda paid the $3,007,451.30 2021 Alameda Bonus to Friedberg.

172. The aforementioned payments were transfers of property of the Plaintiffs.

173. In addition, in July 2020, the FTX Group caused Friedberg to be granted 102,321,128 Serum tokens as well as, potentially, other transfers of cryptocurrencies or assets.

174. The ability to obtain the Serum tokens was an opportunity of the Plaintiffs because of, among other things, Alameda's membership in the ~~Solana~~ Serum Foundation.  Therefore, that opportunity was property of the Plaintiffs, and the transfer of Serum tokens to Friedberg was a transfer of property of the Plaintiffs.

175. On June 15, 2021, Plaintiff Alameda paid the $3,007,451.30 2021 Alameda Bonus to Friedberg.  The payment of the 2021 Alameda Bonus to Friedberg was a transfer of property of Alameda.

176. Plaintiffs did not receive reasonably equivalent value in exchange for any of the aforementioned transfers (the "Fraudulent Transfers").  Friedberg's conduct as General Counsel for Alameda did not provide any benefit to Alameda, but rather centered around acting for the benefit of FTX Insiders and to Alameda's detriment.